UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **EARL EUGENE CLARK, Pro Se,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **Case No. 5:17-cv-01278-FB** |
| vs. | § | |
| | § | |
| **SANTANDER CONSUMER USA,** | § | |
| | § | |
| *Defendant.* | § | |

**DEFENDANT SANTANDER CONSUMER USA'S NO-EVDENCE AND TRADITIONAL
MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW Defendant Santander Consumer USA, with its Motion for Summary Judgment and would respectfully show the Court the following:

### I.   FACTUAL BACKGROUND

On or about November 7, 2006, Plaintiff purchased a 2007 Chevrolet Aveo from Del Chevrolet, Inc. located in Paoli, Pennsylvania.  In order to memorialize the purchase, Plaintiff executed a Loan Repayment and Security Agreement ("Contract") in favor of HSBC.  HSBC became a secured creditor and was listed on the applicable title as a lienholder.  Subsequent to Plaintiff's execution of the Contract, in March 2010, Defendant purchased the account from HSBC and as holder and servicer, became entitled to enforce the Contract pursuant to its original terms.  Those terms included a simple interest finance charge of 9.59% (APR) and 60 monthly payments of $290.93 beginning December 7, 2006.

Apparently not understanding how simple interest contracts work and how amounts due are calculated, in 2012, Plaintiff began a barrage of Better Business Bureau complaints and unfounded attempts at arbitration where various baseless complaints were lodged or asserted,

requiring the time, energy and resources of Defendant to respond. The complaints ranged from a misguided effort to obtain a refund or Defendant's calculation of interest owed on the Contract.

On or about August 19, 2010, Plaintiff initiated a Better Business Bureau Complaint (Case #91155410) to which Defendant responded on September 2, 2010, explaining the issues as they pertained to perceived outstanding fees paid by Plaintiff. Thereafter, in July 2012, Plaintiff instituted an action with the American Arbitration Association ("AAA") seeking a credit or refund for a perceived overpayment. On July 24, 2012, Defendant addressed this complaint, and in doing so, set forth the calculation of interest stemming from Plaintiff's 44 payments that were 10 days or more past due, 2 payments that were 30 days or more past due and 1 payment that was 60 days or more past due.[1] Not happy with the response, Plaintiff sought another hearing through AAA on August 9, 2012. The AAA action was subsequently dismissed.

Before the Court is Plaintiff's latest action, filed December 20, 2017, alleging Defendant violated the Fair Credit Reporting Act ("FCRA").[2] Plaintiff has set forth largely unintelligible allegations and claims of damages, but the gravamen appears to be that Defendant failed to inform a consumer reporting agency his account had been paid in full and have inaccurate information deleted.[3]

On March 23, 2018, Plaintiff moved to amend his Complaint to include allegations of theft brought in Justice of the Peace Court in San Antonio.[4] Instead of pursuing those amended claims in this Court, Plaintiff continued his efforts to pursue his baseless claims in Justice Court, in line with his litigious history regarding this Defendant  To shut Plaintiff down, Defendant

---

[1] Ex. 1, produced by Plaintiff in discovery.
[2] Doc. 1.
[3] *Id*. at pp. 1-2.
[4] Doc. 16.

**DEFENDANT SANTANDER CONSUMER USA'S NO-EVIDENCE AND TRADITIONAL
MOTION FOR SUMMARY JUDGMENT** Page 2

thereafter moved for summary judgment in that court and prevailed.[5]  Plaintiff has not appealed that ruling and his deadline for doing so has passed.[6]

## II.     ARGUMENTS AND AUTHORITIES

Summary judgment is appropriate if the moving party can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  When the moving party has met its Rule 56(c) burden, the non-moving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings.  *See Prejean v. Foster,* 227 F.3d 504, 508 (5th Cir. 2000).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986).  Furthermore, "[t]he non-movant cannot avoid summary judgment . . . by merely making 'conclusory allegations' or 'unsubstantiated assertions.'"  *Calbillo v. Cavender Oldsmobile, Inc.,* 288 F.3d 721, 725 (5th Cir.2002) (quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994)).  In deciding a summary judgment motion, the court reviews the facts drawing all reasonable inferences in the light most favorable to the non-movant.  *Id.* at 255.

In 1970, Congress enacted the FCRA "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with

---

[5] *See* August 14, 2018 dismissal order, attached hereto as Ex. 2.
[6] To the extent Plaintiff is still pursuing his "theft" claims in this Court, Defendant notes that he is barred by *res judicata*.

**DEFENDANT SANTANDER CONSUMER USA'S NO-EVIDENCE AND TRADITIONAL
MOTION FOR SUMMARY JUDGMENT                                                                                                Page 3**

regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). To guard against the use of inaccurate or arbitrary information in evaluating an individual for credit, insurance, or employment, Congress required that consumer reporting agencies "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom" a credit report relates. 15 U.S.C. § 1681e(b). A consumer reporting agency that negligently fails to comply with FCRA's requirements is liable for actual damages, costs, and reasonable attorney's fees. 15 U.S.C. § 1681o.

Given that Plaintiff is essentially alleging that Defendant is a furnisher of information to credit reporting agencies, Plaintiff's FRCA claim must fall under section 1681s–2(b). To recover under section 1681s–2(b), Plaintiff must demonstrate that (1) he notified a consumer reporting agency of inaccurate information; (2) the consumer reporting agency notified the Defendant of the dispute; and (3) the Defendant failed to conduct an investigation, correct any inaccuracies and failed to notify the consumer reporting agency of the results of the investigation. *Richard v. Equifax, Inc.,* No. 4:14–CV–2519, 2014 WL 7335034, at *2 (S.D.Tex. Dec. 17, 2014).

Section 1681e(b) of the FCRA provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). "A credit entry may be 'inaccurate' within the meaning of the statute either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 896 (5th Cir. 1998). "Section 1681e(b) does not impose strict liability for any inaccurate credit report, but only a duty of reasonable care in preparation of the report." *Thompson v. San*

*Antonio Retail Merchs. Ass'n,* 682 F.2d 509, 513 (5th Cir.1982).  "[T]he plaintiff must show that the inaccuracy resulted from a negligent or willful failure to use reasonable procedures when the report was prepared."  *Sepulvado,* 158 F.3d at 896.  "The standard of conduct by which the trier of fact must judge the adequacy of agency procedures is what a reasonably prudent person would do under the circumstances."  *Thompson,* 682 F.2d at 513.

Taken together, Plaintiff must show Defendant negligently created an inaccurate credit report *and* that such negligence proximately caused his injuries.  Plaintiff can do neither.

### a) Plaintiff has no evidence Defendant violated the FCRA

Plaintiff, though asked for documentation illustrating Defendant's bad acts, offered none. Plaintiff simply offers a credit report evidencing a lower credit score, but leaves unanswered how it was Defendant's negligent fault or even the consequence of Defendant's actions.  Plaintiff has no evidence that Defendant failed to conduct a reasonable investigation.  Indeed, in one of Plaintiff's proffered documents—purportedly a TransUnion credit report dated October 20, 2017—his Santander account is listed as "Current; Paid or Paying as Agreed."[7]  In other words, Plaintiff's own evidence shows the credit reporting agency listed his account as "paid in full." Therefore, even by Plaintiff's own standards, Defendant did not improperly mischaracterize his account's status.

As set forth in the Declaration of Brad Quick, on or about December 27, 2017, Defendant submitted a Universal Data Form as an update on Plaintiff's account.[8]  The Credit Bureaus are to take the information submitted by SC on the Universal Data Form and incorporate same in the credit reports to accurately reflect a consumer's credit history.  Pursuant to same, a code of the "XB" was entered by Defendant at Field 20-Compliance Condition Code, which

---

[7] *See* Ex. 3, produced by Plaintiff in response to Defendant's discovery requests.
[8] *See* Ex. 4; Decl. of Brad Quick and Exhibits attached thereto.

means the account information disputed by consumer.  Furthermore, an Account Status of "13" was entered by Defendant which means closed.[9]  This Universal Data Form was electronically submitted to the credit bureaus, including TransUnion and all other relevant bureaus, on or about December 27, 2017 through the appropriate electronic transmission system.[10]  No request was made by Defendant that TransUnion delete the account.[11]

In further review of the account documents, this particular account is being appropriately reported in line with the Universal Data Form by both Equifax and Experian in line with the Universal Data Form.  No other bureau is reporting the account as "deleted."  As for the deletion by TransUnion, it was not deleted in accordance with the Universal Data Form that Defendant submitted on December 27, 2017.[12]  Most importantly, Defendant has submitted no other Universal Data Form to request the trade line be deleted and to reflect as such on the purported letter proffered by Plaintiff.[13]

Again, in reviewing the account documents and discussions had with TransUnion, this particular account is being appropriately reported in line with the Universal Data Form by both Equifax and Experian.  As for the deletion by TransUnion, it was not deleted in accordance with the Universal Data Form that Defendant submitted on December 27, 2017 and Defendant has submitted no other Universal Data Form to request the trade line be deleted by TransUnion.[14]  At its core, the deletion simply runs contra to anything this Defendant did or requested to be done with regard to the account in question.  Further, this tradeline and account were not deleted by TransUnion due to Defendant's failure to respond to a dispute, as required under the FCRA, or in

---

[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*

response to any sort of separate or errant update submitted by Defendant to this particular credit bureau (TransUnion).[15]

Through Defendant's investigation as to why TransUnion, as opposed to all credit bureaus, would be the only one to have deleted the account, the decision to delete the account was made solely by TransUnion without any confirmation or discussion with Defendant with regard to TransUnion's decision to take this unilateral act.[16] In fact, the dispute was never relayed to Defendant. Thus, Defendant was never provided an opportunity to respond to the purported dispute. Because Defendant has not been provided with the dispute by either Plaintiff or TransUnion, Defendant has no way to ascertain the true nature of Plaintiff's alleged dispute or reasons for same.[17]

As such, the evidence shows that the other bureaus, at least, are accurately reporting the account and Plaintiff can put forth no evidence that Defendant took some affirmative step to delete the trade line as it pertains to the TransUnion report because Defendant was reporting inaccurate information. Defendant's evidence reflects the exact opposite and Defendant's compliance with the Fair Credit Reporting Act. Therefore, Plaintiff has not—and cannot— provide evidence that Defendant violated the FCRA.

### b) Plaintiff has no evidence any alleged FCRA violations caused him damages.

Plaintiff's claimed damages involve fixing his credit report (which is already correct and needs no court intervention), money for "lost employment," attorney's fees, actual damages, and punitive damages.

First, Plaintiff does not allege actual damages beyond his employment issue. But, Plaintiff cannot connect any alleged negligence of Defendant with lost employment. As his own

---

[15] *Id.*
[16] *Id.*
[17] *Id.*

documents produced in discovery illustrate, Plaintiff was offered numerous employment opportunities after his account with Defendant was closed.[18]  Instead, he seems to claim (1) because he could not obtain sufficient credit; he (2) could not get another automobile; and thus (3) he could not accept these numerous offers.  This alleged loss is not proximately connected to any of Defendant's alleged bad acts.  Further, while making no attempt to downplay of the advantages of car ownership, Defendant requests this Court take judicial notice that millions of citizens are without their own automobiles but maintain fulltime employment—even numerous jobs at once.  Further, and critically, Plaintiff makes no direct allegation and offers no evidence that potential employers denied him job opportunities due to his allegedly low credit.

As to punitive damages, Plaintiff's claims, much less evidence, do not even approach the threshold for such extraordinary relief.  The Fifth Circuit has held that "[o]nly defendants who engaged in 'willful misrepresentations or concealments' have committed a willful violation and are subject to punitive damages under § 1681n." *Stevenson,* 987 F.2d at 294 (citing *Pinner,* 805 F.2d at 1263).  To be willful, such misrepresentations must be the result of either a knowing violation or reckless disregard of the law.  *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 127 S.Ct. 2201, 2208–10, 167 L.Ed.2d 1045 (2007).  Plaintiff has no evidence that Defendant acted willfully in damaging his credit rating.  In fact, Defendant has offered evidence that it *complied* with the FCRA's reporting requirements.  Thus, Defendant is entitled to summary judgment on all of Plaintiff's punitive damages for willful violations of the FCRA.

Lastly, Plaintiff, *pro se* and not an attorney, cannot recover fees for an attorney he does not have and that this Court declined to appoint.[19]

---

[18] Ex. 5, produced by Plaintiff in discovery.
[19] Doc. 4 and 17.

Therefore, even assuming Defendant committed a tortious act, Plaintiff has not pled or evidenced any cognizable damages under the FCRA.

### III.  PRAYER

**WHEREFORE,** Defendant respectfully prays that Defendant be granted judgment in its favor as a matter of law on all claims alleged by Plaintiff, Plaintiff takes nothing by way of his Complaint and Defendant be granted its costs, fees, and all other appropriate relief at equity or law to which Defendant may be entitled.

Respectfully submitted,

By:   */s/ Brent W. Martinelli*
**FRANK ALVAREZ**
State Bar No. 00796122
frank.alvarez@qpwblaw.com
**BRENT W. MARTINELLI**
State Bar No. 24037037
brent.martinelli@qpwblaw.com

**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
1700 Pacific Avenue, Suite 4545
Dallas, Texas 75201
(214) 754-8755 (Telephone)
(214) 754-8744 (Facsimile)

**ATTORNEYS FOR DEFENDANT**

### CERTIFICATE OF SERVICE

The undersigned certifies that on the 19th day of October, 2018, a true and correct copy of the foregoing was served via First Class Mail on Plaintiff:

Earl Eugene Clark
427 Bertetti Drive
San Antonio, Texas 78227

*/s/ Brent W. Martinelli*
**BRENT W. MARTINELLI**